1  Steven J. Nataupsky (CA SBN 155913)
   steven.nataupsky@knobbe.com
2  Lynda J. Zadra-Symes (CA SBN 156511)
   lynda.zadrasymes@knobbe.com
3  Nicole Rossi Townes (CA SBN 272342)
   nicole.townes@knobbe.com
4  Jacob R. Rosenbaum (CA SBN 313190)
   jacob.rosenbaum@knobbe.com
5  KNOBBE, MARTENS, OLSON & BEAR, LLP
   2040 Main Street, Fourteenth Floor
6  Irvine, CA  92614
   Phone: (949) 760-0404
7  Facsimile: (949) 760-9502

8  Attorneys for Plaintiff
   MONSTER ENERGY COMPANY

9

10

11

12              IN THE UNITED STATES DISTRICT COURT

13            FOR THE CENTRAL DISTRICT OF CALIFORNIA

14
   _____
15  MONSTER ENERGY COMPANY,            )   Case No. 5:18-cv-00869
    a Delaware corporation,             )
16                                      )   **COMPLAINT FOR TRADEMARK**
                Plaintiff,              )   **INFRINGEMENT, TRADE DRESS**
17                                      )   **INFRINGMENT, FALSE**
            v.                          )   **DESIGNATION OF ORIGIN,**
18                                      )   **TRADEMARK DILUTION,**
    MONSTA ATHLETICS, LLC, a            )   **COUNTERFEITING, COPYRIGHT**
19  California limited liability company. )  **INFRINGEMENT, PETITION FOR**
                                        )   **CANCELLATION, AND UNFAIR**
20              Defendant.              )   **COMPETITION**
                                        )
21                                      )   **DEMAND FOR JURY TRIAL**
                                        )
22  _____

23

24

25

26

27

28

Plaintiff Monster Energy Company ("Plaintiff" or "Monster") hereby complains of Defendant Monsta Athletics, LLC ("Defendant"), and alleges as follows:

## I.  JURISDICTION AND VENUE

1.      This is an action for 1) trademark infringement, trade dress infringement, and false designation of origin under 15 U.S.C. § 1125(a), 2) trademark infringement under 15 U.S.C. § 1114, 3) trademark dilution under 15 U.S.C. § 1125(c), 4) trademark counterfeiting under 15 U.S.C. § 1114, 5) copyright infringement under 17 U.S.C. §§ 501 *et seq.*, 6) petition for cancellation of U.S. Trademark Registration No. 4,967,673, 7) trademark dilution arising under California Business & Professions Code § 14247, 8) unfair competition arising under California Business & Professions Code §§ 17200, *et seq*, and 9) California common-law unfair competition.

2.      The Court has original subject matter jurisdiction over the claims that relate to trademark infringement, trade dress infringement, trademark dilution, false designation of origin, counterfeiting, and cancellation of a U.S. Trademark Registration pursuant to 15 U.S.C. §§ 1116 and/or 1121(a), copyright infringement arising under 17 U.S.C. §§ 501 *et seq.*, and also pursuant to 28 U.S.C. §§ 1331 and 1338, as these claims arise under the laws of the United States.  The Court has supplemental jurisdiction over the claims in this Complaint which arise under state statutory and common law pursuant to 28 U.S.C. §§ 1338(b) and 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

3.      This Court has personal jurisdiction over Defendant because Defendant has a continuous, systematic, and substantial presence within this Judicial District and within California.  Defendant's headquarters are located at 1090 5th Street, Suite 115, Calimesa, California 92223.  Defendant sells,

advertises, markets and promotes its goods and services in California, including in this Judicial District.  In addition, by committing acts of trademark infringement, trade dress infringement, trademark dilution, false designation of origin, counterfeiting, copyright infringement, and unfair competition in this Judicial District, including, but not limited to, by using infringing marks and designs in connection with the advertisement, marketing, promotion and rendering of goods and services to customers in this Judicial District, Defendant's acts form a substantial part of the events or omissions giving rise to Monster's claims.

4.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and (c) at least because Defendant resides in this Judicial District and a substantial portion of the events complained of herein took place in this Judicial District.

## II.  THE PARTIES

5.    Monster is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 1 Monster Way, Corona, California 92879.

6.    Upon information and belief, Defendant Monsta Athletics, LLC is a limited liability company organized and existing under the laws of the State of California, having a principal place of business at 1090 5th Street, Suite 115, Calimesa, California 92223.

## III.  COMMON ALLEGATIONS FOR ALL CLAIMS OF RELIEF

### A.    Monster and Its Trademarks, Trade Dress, and Copyrights

7.    Monster is a nationwide leader in the business of developing, marketing, selling, and distributing beverages.  Monster has achieved extensive exposure and widespread recognition of its MONSTER™ brand through its sponsorship of sports, athletes and teams, among other sponsorships.  In addition to its numerous trademark registrations for beverages, Monster owns

trademark registrations for promoting sports and music events, clothing, sports gear and bags, among many other goods and services.

8.      In 2002, long before Defendant's acts described herein, Monster launched its MONSTER ENERGY® drink brand, bearing its now-famous ("Claw Icon"), MONSTER™, and MONSTER ENERGY® marks.

9.      In addition, since 2002, Monster has consistently used a distinctive trade dress for its packaging and promotional materials, including the elements of a black or black and grey background, a claw icon, a bright contrasting accent color, and an overall aggressive, edgy theme, as shown below (the "MONSTER Trade Dress").



The majority of Monster's promotional materials use the same green and black color scheme as the original MONSTER ENERGY® drink shown above which is its best-selling product.

10.     Monster's second best-selling beverage is the Lo-Carb MONSTER ENERGY® drink which uses a blue and black color scheme as shown below.

1
2
3
4
5
6
7
8
9
10
11
12



13  Monster has continuously sold its Lo-Carb MONSTER ENERGY® drink using
14  the blue and black color scheme since 2003.  Monster has also expanded its use
15  of the blue and black color scheme into other products such as Monster Energy
16  Absolutely Zero®, Monster Energy Ultra Blue®, Monster Energy Zero Ultra®,
17  Monster Hydro™ Blue Ice, Muscle Monster® Vanilla, Caffe Monster™ Vanilla,
18  and Espresso Monster™ Vanilla as shown below.

19
20
21
22
23
24
25
26
27
28



1
2
3
4
5
6
7
8
9
10
11



12   11.   Monster's successful line of MONSTER™ drinks has grown to

13   include numerous well-known products, the containers and packaging of which

14   are prominently marked with the MONSTER™ and Claw Icon marks.  The

15   MONSTER™ line of drinks includes or has included, but is not limited to,

16   original Monster Energy® and Lo-Carb Monster Energy®; Monster Assault®;

17   Juice Monster® Khaos®, Juice Monster® Ripper®, Juice Monster® Pipeline

18   Punch®, and Juice Monster® Mango Loco; Ubermonster®; Monster Energy®

19   Gronk; Monster Energy® Import; Punch Monster® Baller's Blend and Punch

20   Monster® Mad Dog; Monster Energy Absolutely Zero®; Monster Energy Zero

21   Ultra®, Monster Energy Ultra Blue®, Monster Energy Ultra Red®, Monster

22   Energy Ultra Sunrise®, Monster Energy Ultra Citron®, Monster Energy Ultra

23   Black® and Monster Energy Ultra Violet®; Monster Rehab®, which is a line of

24   tea-based non-carbonated energy drinks, which includes Monster's Monster

25   Rehab® Tea + Orangeade + Energy, Monster Rehab® Tea + Pink Lemonade +

26   Energy, Monster Rehab® Tea + Lemonade + Energy, Monster Rehab®

27   Raspberry Tea + Energy, and Monster Rehab® Peach Tea + Energy; Java

28   Monster®, which is a line of dairy based coffee plus energy drinks; Muscle

Monster®, which is a line of energy shakes; Monster Energy Extra Strength Nitrous Technology®, which is a line of energy drinks with a blend of nitrous oxide and carbon dioxide to create a smoother energy drink; Caffe Monster™, which is a line of beverages comprised of Arabica coffee, dairy and other ingredients; Espresso Monster™, which is an espresso beverage blended with milk and enhanced with Monster's energy blend; Monster Hydro™, which is a non-carbonated lightly sweetened refreshing energy drink with natural flavors; and ⦿® Monster Energy® which is a five ounce concentrated energy drink, among others (hereinafter, collectively referred to as the "MONSTER™ line of drinks").

12.   In 2002 and 2003, Monster filed numerous U.S. Trademark registrations for its MONSTER and Claw Icon Marks in connection with beverages and nutritional supplements, including, but not limited to, U.S. Trademark Registration Nos. 3,044,315 for the MONSTER ENERGY® mark, 3,057,061 for the MONSTER ENERGY® mark, 3,044,314 for the M MONSTER ENERGY® mark, 3,134,842 for the M MONSTER ENERGY® mark, 3,134,841 for the MONSTER® mark, and 2,903,214 for the ⦿® mark. Since then Monster has continued to file U.S. Trademark registrations for its MONSTER™ line of drinks, including but not limited to, U.S. Trademark Registration Nos. 3,959,457 for the JAVA MONSTER® mark, 4,128,288 for the MONSTER REHAB® mark, 4,376,796 for the MUSCLE MONSTER® mark, and 4,634,053 for the MONSTER ASSAULT® mark.

13.   In addition to its numerous U.S. Trademark Registrations for beverages and nutritional supplements, Monster is also the owner of numerous trademark registrations for marks that incorporate its famous Claw Icon mark, MONSTER™ mark and/or MONSTER ENERGY® mark, for use in connection

with clothing, sporting goods, promoting goods and services in the sports industry, and other products and services, including the following U.S. Trademark Registrations:

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 3,908,601 | Clothing, namely, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands and gloves; headgear, namely, hats and beanies | 04/02/2009 | 01/18/2011 |
|  | 4,051,650 | Clothing, namely, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands and gloves; headgear, namely hats and beanies | 07/28/2010 | 11/08/2011 |
| MONSTER ENERGY | 4,721,433 | Promoting goods and services in the sports, motorsports, electronic sports, and music industries through the distribution of printed, audio and visual promotional materials; promoting sports and music events and competitions for others | 03/12/2014 | 04/14/2015 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 4,721,432 | Promoting goods and services in the sports, motorsports, electronic sports, and music industries through the distribution of printed, audio and visual promotional materials; promoting sports and music events and competitions for others | 03/12/2014 | 04/14/2015 |
|  | 3,923,683 | All purpose sport bags; All-purpose carrying bags; Backpacks; Duffle bags | 04/02/2009 | 02/22/2011 |
|  | 3,963,669 | All-purpose sport bags; all-purpose carrying bags; backpacks; duffel bags | 07/28/2010 | 05/17/2011 |
|  | 3,914,828 | Sports helmets | 04/02/2009 | 02/01/2011 |
|  | 4,011,301 | Sports helmets; video recordings featuring sports, extreme sports, and motor sports | 07/27/2010 | 08/16/2011 |
|  | 4,332,062 | Silicone wrist bands; Silicone bracelets; Jewelry, namely, bracelets and wristbands | 10/05/2012 | 05/07/2013 |
|  | 3,908,600 | Stickers; sticker kits comprising stickers and decals; decals | 04/02/2009 | 01/18/2011 |

-8-

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 3,963,668 | Stickers; sticker kits comprising stickers and decals; decals; posters | 07/28/2010 | 05/17/2011 |
|  | 4,660,598 | Lanyards; Lanyards for holding whistles, keys, eyeglasses, sunglasses, mobile telephones, badges, identification cards, event passes, media passes, photographs, recording equipment, or similar conveniences | 08/26/2013 | 12/23/2014 |
|  | 4,822,675 | Lanyards; Lanyards for holding whistles, keys, eyeglasses, sunglasses, mobile telephones, badges, identification cards, event passes, media passes, photographs, recording equipment, or similar conveniences | 8/25/2013 | 09/29/2015 |

14.    In addition, Monster is also the owner of numerous trademark registrations for its MONSTER and Claw Icon marks displayed in the colors green and blue, including the following U.S. Trademark Registrations:

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 4,865,703 | Nutritional supplements in liquid form containing low Carbohydrates; Non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy drinks and sports drinks; all the forgoing containing low carbohydrates | 02/02/2015 | 12/08/2015 |
|  | 4,849,687 | Nutritional supplements in liquid form; vitamin fortified beverages; Non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy drinks and sports drinks | 02/02/2015 | 11/10/2015 |

| | MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|---|
| |  | 4,849,747 | Nutritional supplements in liquid form; Non-alcoholic beverages, namely, soft drinks, carbonated soft drinks, energy drinks, and sports drinks; energy drinks and sports drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs | 02/10/2015 | 11/10/2015 |
| |  | 4,865,702 | Nutritional supplements in liquid form;  Non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy drinks and sports drinks | 02/02/2015 | 12/08/2015 |
| |  | 5,022,676 | Nutritional supplements in liquid form; Non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy drinks and sports drinks | 05/28/2014 | 08/16/2016 |

15.     Attached hereto as Exhibits A1-A18 are true and correct copies of Monster's trademark registrations identified in Paragraphs 13 and 14 of this Complaint, which are hereby incorporated by reference.   Collectively, those registrations and trademarks, including all common law rights therein, are referred to as the "MONSTER Marks."

16.     Pursuant to 15 U.S.C. § 1065, U.S. Trademark Registration Nos. 3,908,600, 3,908,601, 3,914,828, 3,963,669, and 3,963,668 are incontestable.

17.     In addition, Monster is the owner of valid copyright registrations for its Claw Icon and can art and packaging designs featuring its Claw Icon, including at least U.S. Copyright Registration Nos. VA 1-789-900, VA 1-789-991, VA 1-727-577, VA 1-737-654, and VA 1-749-215. Collectively, these registrations are referred to as the "Copyrighted Claw Icon Designs."   Attached hereto as Exhibits B1-B5 are true and correct copies of Monster's copyright registrations.

18.     Long before Defendant's acts described herein, Monster used, and continues to use, its MONSTER Marks, MONSTER Trade Dress and Copyrighted Claw Icon Designs in connection with apparel and accessories, including, for example, t-shirts, hooded shirts, hooded sweatshirts, sweatshirts, jackets, pants, bandanas, sweat bands, gloves, headgear, and sports bags.  True and correct examples of authorized hats, apparel, and accessories bearing Monster's MONSTER Marks, MONSTER Trade Dress and/or Copyrighted Claw Icon Designs are shown below:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28






1
2
3
4
5
6
7

 

8    19.    Since 2002, Monster has sold and/or distributed millions of articles
9    of clothing, including, but, not limited to, t-shirts, sweatshirts, outerwear,
10   athletic attire and hats.  These clothing items have been sold and/or distributed
11   by Monster through giveaways, the MONSTER ARMY™ program, the
12   Monster Gear program, and Monster's distribution of products to retailers and
13   distributors, among other channels.  In addition, since at least as early as 2006,
14   Monster has licensed its MONSTER Marks and Copyrighted Claw Icon Designs
15   for use in connection with clothing, accessories, and other items.  The clothing
16   items prominently display the MONSTER Marks, Copyrighted Claw Icon
17   Designs and/or MONSTER Trade Dress.

18   20.    Monster has also used or licensed the use of its MONSTER Marks,
19   MONSTER Trade Dress and/or Copyrighted Claw Icon Designs for gloves,
20   sports helmets, sports bags, backpacks, stickers and other related accessories.
21   True and correct examples of authorized products bearing Monster's
22   MONSTER Marks, MONSTER Trade Dress and/or Copyrighted Claw Icon
23   Designs are shown below:

24
25
26
27
28

-14-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



21.    Monster's MONSTER Marks and MONSTER Trade Dress are the subject of substantial and continuous marketing and promotion by Monster. Since 2002, Monster has spent approximately $4.6 billion marketing and promoting its MONSTER Marks and MONSTER Trade Dress.  In 2017 alone, Monster spent $537 million dollars in advertising, promoting and marketing its brand, marks and trade dress.

22.    Monster has and continues to widely market and promote its MONSTER Marks and MONSTER Trade Dress in the industry and to consumers by displaying the marks and trade dress on billions of cans of its MONSTER™ drinks sold in the U.S.   Monster's promotional efforts also include – by way of example but not limitation – sponsorship of athletes, athletic teams, athletic competitions, concerts and live events around the world, widespread distribution of promotional and point of sale materials, product samplings, promotion in magazines and other industry publications, promotion on the MONSTER ENERGY® website and other Internet websites, and attendance at trade shows.  Virtually every marketing and promotional item uses the MONSTER Trade Dress.

23.    Shown below are true and accurate representative pictures illustrating just a few examples of Monster's MONSTER point of sale materials bearing its famous MONSTER Marks and/or MONSTER Trade Dress:

-15-

1
2
3
4
5
6
7





8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28




1
2
3
4
5
6
7
8
9

 

10      24.     Monster's Copyrighted Claw Icon Designs, MONSTER Trade

11  Dress and MONSTER Marks are featured in the outfield of the Los Angeles

12  Angels' stadium, and are seen by attendees at all games and events at the

13  stadium as well as television viewers of about 80-90 games per year.  An image

14  showing Monster's MONSTER Marks, Copyrighted Claw Icon Designs and

15  MONSTER Trade Dress displayed at the Los Angeles Angels' stadium is

16  shown below:

17
18
19
20
21
22
23
24
25
26
27
28



25.   Monster's MONSTER Marks, MONSTER Trade Dress, and/or Copyrighted Claw Icon Designs have also been displayed at the National Football League Arizona Cardinals' and San Diego Chargers' stadiums and at National Hockey League Anaheim Ducks' games.   Monster's MONSTER Marks, MONSTER Trade Dress and/or Copyrighted Claw Icon Designs have been prominently displayed at various events in the fan zone at Major League Lacrosse games.  Monster has also been the "Official Energy Drink of the Wells Fargo Center" where the Philadelphia 76ers National Basketball Association and Philadelphia Flyers National Hockey League teams play.

26.   Monster sponsors or has previously sponsored more than 200 athletes or athletic teams who compete in a wide-variety of sports, including, but not limited to, athletes competing in the Ultimate Fighting Championship ("UFC"), the X Games, the Winter X Games, the MONSTER ENERGY® AMA Supercross motorcycle racing, Formula One automobile racing, Road Racing World Championship Grand Prix motorcycle racing ("MotoGP"), NASCAR, Professional Bull Riding, the Kentucky Derby and the National Football League.   When competing, at public appearances, or both, the sponsored

athletes and team members almost always wear clothing or use equipment that prominently display the Copyrighted Claw Icon Designs, MONSTER Trade Dress and/or MONSTER Marks. Through Monster's sponsorships, millions of consumers have been exposed to the Copyrighted Claw Icon Designs, MONSTER Trade Dress and the MONSTER Marks when they watch the athletes and teams compete at events—many of which are televised nationwide—or see the athletes at public appearances or in Internet postings and magazines.

27. For example, Monster has sponsored Victor Espinoza and American Pharoah, who won the American Triple Crown and the Breeder's Cup Classic in 2015. Monster also sponsors Rob Gronkowski, a professional football player who plays for the NFL's New England Patriots. In 2011, Gronkowski set the NFL single-season record for touchdowns and receiving yards by a tight end and became the first tight end in NFL history to lead the conference in scoring. Additionally, Monster sponsors UFC athletes who have held championships, including Daniel Cormier, light heavyweight champion in the UFC, Paige Vanzant, straw weight and Dancing With the Stars (U.S.) Season 22 runner-up, Tyron Woodley, welterweight champion, and Conor McGregor, featherweight champion in the UFC.

28. Monster began sponsoring Tiger Woods in 2016. Tiger Woods is one of the most successful and famous golfers in the world. In his storied career, Woods has won fourteen major championships, including the prestigious Masters Tournament, the U.S. Open, the British Open Championship and the PGA Championship. An image showing Tiger Woods with his golf bag bearing the MONSTER Marks, Copyrighted Claw Icon Designs and MONSTER Trade Dress is shown below:



29.     As of 2015, Monster sponsors the UFC as its official energy drink partner (excluding in Brazil).  The Copyrighted Claw Icon Designs appears on the UFC's Octagon center canvas and the fighter gate vertical bumpers for all live UFC events and on the Octagon Girls uniforms, excluding those which take place in Brazil.  Some examples of Monster's sponsorships in those areas are shown below:




1
2
3
4
5
6
7
8
9
10
11
12



13    30.    In addition to UFC events, Monster sponsors numerous other

14  athletic events in connection with its MONSTER Marks, Copyrighted Claw

15  Icon Designs and MONSTER Trade Dress.  For example, Monster sponsors or

16  has sponsored the X Games, the MONSTER ENERGY® AMA Supercross

17  Series, MotoGP races, the MONSTER ENERGY® Pipeline Pro Surf event, the

18  MONSTER ENERGY® Sun Diego Pro Surf Tour, the MONSTER ENERGY®

19  Speedway World Championship, the Professional Bull Riders bull riding series

20  and its 20 plus events in cities around the United States (televised in the United

21  States on CBS), the MONSTER ENERGY® Billabong XXL Awards, Street

22  League Skateboarding events, Arenacross events, the Off-Road Championship

23  event (TORC), SCORE Off-Road Racing events, King of the Hammers desert

24  racing event, and the Pole Position racing events, among others.    Some

25  examples of Monster's sponsorships in those areas are shown, for example,

26  below:

27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

 



 

31.    On January 1, 2017, Monster became the title sponsor of NASCAR's premier series (formerly called the NASCAR Sprint Cup Series), which is now called the Monster Energy® NASCAR Cup Series.  Monster also

-22-

became the official energy drink of NASCAR.  NASCAR is the second most watched sport in the U.S., with over 5 million fans watching each of the 41 races.  Below is the logo for the Monster Energy® NASCAR Cup Series:



32.    Monster also has sponsored and continues to sponsor numerous athletes that compete in various classes of NASCAR racing.  For example, in 2011, Monster began its sponsorship of NASCAR driver Kyle Busch, who holds several records in NASCAR racing and won the prestigious 2015 Sprint Cup Series, the top racing series of NASCAR.  In 2015, Kyle Busch earned his 75th Xfinity Series win at Kansas Speedway racing for Joe Gibbs Racing in the No. 54 MONSTER ENERGY® Toyota Camry.   In 2012, Monster added sponsorship of Kyle's older brother, Kurt Busch, who is also a NASCAR driver and winner of the 2010 All-Star Race and the 2004 Sprint Cup.  Monster also sponsors the Stewart Haas Racing team with its current driver Kurt Busch who drives the #41 Monster Energy®/HAAS Automation Chevy.  Monster also has been a long-time sponsor of Ricky Carmichael who transitioned from one of the world's greatest Supercross and Motocross racers to a NASCAR truck driver. Carmichael prominently promotes Monster's MONSTER Marks and MONSTER Trade Dress.  An example of Monster's sponsorship of Carmichael is shown below:



33.     In addition to sponsoring professional athletes and teams, since at least 2004, Monster has maintained an amateur athlete development program under the mark MONSTER ARMY™.  More than 376,000 amateur athletes in various sports have applied to be accepted as part of the MONSTER ARMY™ through the MONSTER ARMY™ web site WWW.MONSTERARMY.COM. Representative images illustrating Monster's use of its MONSTER ARMY™ mark are shown below:




1
2
3
4
5
6
7
8
9
10
11



12      34.    Monster supports members of the MONSTER ARMY™ in many

13  different ways, but such support often includes assistance with clothing, gear,

14  training, and travel.  Members of the MONSTER ARMY™ wear clothing and

15  other gear branded with the MONSTER Marks, MONSTER Trade Dress and/or

16  Copyrighted Claw Icon Designs in order to promote the MONSTER Marks and

17  MONSTER Trade Dress during competition.  Further, Monster's MONSTER

18  ARMY™ has a Facebook page at https://www.facebook.com/MonsterArmy.

19  The MONSTER ARMY™ Facebook page has more than 315,000 likes.

20      35.    When competing, or at public appearances, the sponsored athletes

21  and team members almost always wear clothing or use equipment that

22  prominently displays the MONSTER Marks, MONSTER Trade Dress, and/or

23  Copyrighted Claw Icon Designs.  The sponsored athletes and team members are

24  frequently shown drinking MONSTER™ drinks, which bear the MONSTER

25  Marks, the MONSTER Trade Dress and/or Copyrighted Claw Icon Designs.

26  The MONSTER Marks, MONSTER Trade Dress and/or Copyrighted Claw Icon

27  Designs are also prominently displayed at the event venues, as well as on the

28  clothing, helmets, and/or bikes, trucks or cars of riders or teams sponsored by

Monster.  Through Monster's sponsorships, millions of consumers have been exposed to the MONSTER Marks, MONSTER Trade Dress, and/or Copyrighted Claw Icon Designs when they watch the athletes and teams compete at events – many of which are televised nationwide and around the globe– or see athletes at public appearances or in Internet postings and magazines.

36.    Monster's MONSTER Marks, MONSTER Trade Dress, and/or Copyrighted Claw Icon Designs have also received significant exposure in national publications.  For example, the marks and/or trade dress have been featured in *Fortune*, *Newsweek*, *Beverage World*, *Beverage Spectrum*, *Forbes* and *Business Week*, among other publications.

37.    Monster's MONSTER Marks, MONSTER Trade Dress and Copyrighted Claw Icon Designs receive extensive publicity and exposure through Monster's websites including its www.monsterenergy.com website and social media sites including Monster's Facebook, Twitter, Instagram and YouTube accounts.  As of June 2015, Monster's www.monsterenergy.com website was receiving over 50,000 visitors per day.  Monster's Facebook page has over 26 million "likes."  Monster's Instagram page has over 4.4 million followers and Monster's Twitter page has over 3.3 million followers.  Monster's YouTube page has over 242 million views.  Monster's MONSTER Marks, MONSTER Trade Dress and Copyrighted Claw Icon Designs are displayed on these websites and social media pages.

38.    Monster's MONSTER™ line of drinks has achieved substantial commercial success.  Retail sales now exceed 3 billion cans per year, with estimated retail sales at approximately $6 billion per year.  Monster's MONSTER™ brand has established itself as the best-selling energy drink brand in the United States by unit volume.  While Monster continues to expand its successful MONSTER™ line of drinks, Monster's best-selling drink is still the

original Monster Energy® drink, which prominently features the MONSTER Marks and MONSTER Trade Dress.

39.   As a result of Monster's substantial use and promotion of its MONSTER Marks, MONSTER Trade Dress, and Copyrighted Claw Icon Designs, the marks and trade dress have acquired great value as specific identifiers of Monster's products and services and serve to identify and distinguish Monster's products and services from those of others.  Customers in this Judicial District and elsewhere readily recognize the MONSTER Marks and the MONSTER Trade Dress as distinctive designations of the origin of Monster's MONSTER brand of products, services and promotional items.  The MONSTER Marks, MONSTER Trade Dress and Copyrighted Claw Icon Designs are intellectual property assets of enormous value as symbols of Monster and its quality products and services, reputation, and goodwill.

**B.    Defendant's Infringing Activities**

40.   Defendant is engaged in the business of producing, selling, and distributing sports equipment, clothing, sports bags, and accessories.  Defendant also is affiliated with the softball team WC Monstas.  Defendant owns and operates the website https://monstaathletics.com/ and maintains the Facebook accounts                                https://www.facebook.com/MonstaAthletics/, https://www.facebook.com/Monsta-Athletics-Fastpitch-144871772823715/, https://www.facebook.com/SoDakMonsta/,                    Twitter            profile https://twitter.com/MonstaAthletics,                Instagram             account https://www.instagram.com/monsta_athletics/?hl=en,    and    YouTube    page https://www.youtube.com/user/monstaathletics/featured.

41.   Without permission or consent from Monster, Defendant has sold and is offering for sale goods and services in connection with the trademarks MONSTA,    MONSTA    ATHLETICS,    MONSTA    GEAR,    ,

, and other claw like designs which are confusingly similar to the MONSTER Marks and trade dress that is confusingly similar to the MONSTER Trade Dress.   Some examples of Defendant's goods displaying the infringing marks and/or trade dress are shown below:




1
2
3
4
5
6
7
8
9
10



11
12
13
14



15
16

    42.     Additionally, upon information and belief, Defendant and/or its affiliate softball team has sold counterfeit hats and clothing using a design that is identical to the Claw Icon Mark and substantially similar to Monster's Copyrighted Claw Icon Designs, as  shown below:

17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



43.     Upon information and belief, Defendant is affiliated with a softball team named the "WC Monstas."  The WC Monstas have used team uniforms which bear a design that is identical to the Claw Icon Mark and substantially similar to Monster's Copyrighted Claw Icon Designs, as shown below:



1
2
3
4
5
6
7
8
9
10
11
12
13



14
15
16
17
18
19
20
21
22
23
24
25
26
27



28

Upon information and belief, the WC Monsta softball team has also promoted

their team in connection with a design that is identical to the Claw Icon Mark and substantially similar to Monster's Copyrighted Claw Icon Designs, as shown below:



44.   Defendant has also promoted Defendant's products with Monster's products in an attempt to further create a false association between Monster and Defendant, as shown below:



45.   Upon   information   and   belief,   Defendant   refers   to   fans   and

followers of its products as the "Monsta Militia" and uses a mark that is confusingly similar to Monster's MONSTER Marks in connection with the Monsta Militia, as shown below:



46.    On June, 10, 2015 Defendant filed a U.S. Trademark Application for the ⟨mark⟩ mark  for "Baseball caps; Baseball caps and hats; Baseball uniforms" in International Class 25 and "Baseball bat bags; Baseball bats and baseball batting tees; Baseball batting gloves; Baseball glove bags; Baseball gloves; Baseball mitts; Grip tapes for baseball bats; Tennis racquets, baseball bats, cricket bats, golf clubs and hockey sticks" in International Class 28, which registered on May 31, 2016 as U.S. Registration No. 4,967,673.

47.    Defendant is not affiliated with Monster.  At no time has Monster ever given Defendant license, permission or authority to use or display Monster's MONSTER Marks, MONSTER Trade Dress or Copyrighted Claw Icon Designs.

48.    Specifically, Defendant has attempted to capitalize on Monster's valuable reputation and customer goodwill in the MONSTER Marks and MONSTER Trade Dress by using marks and trade dress that are identical and confusingly similar to Monster's MONSTER Marks and MONSTER Trade Dress on Defendant's products, website and social media pages and in connection with the sponsorship or affiliation with an athletic team.

49.     Upon information and belief, Defendant was aware of Monster, the MONSTER Marks and the MONSTER Trade Dress when Defendant commenced its infringing activities.

50.     Without permission or consent from Monster, Defendant has infringed Monster's MONSTER Marks, and MONSTER Trade Dress in interstate commerce by promoting, advertising, selling, and/or offering to sell its goods and services using marks, including the MONSTA, MONSTA ATHLETICS, MONSTA GEAR, MONSTA MILITIA,                   ,

 , and other claw like designs which are confusingly similar or identical to the MONSTER Marks and a trade dress that is confusingly similar to the MONSTER Trade Dress.

51.     Upon information and belief, Defendant's actions alleged herein are intended to cause confusion, mistake, or deception as to the source of Defendant's products and are intended to cause consumers and potential customers to believe that Defendant's products are associated with Monster or Monster's MONSTER family of products or services, when they are not.

52.     Indeed, Defendant has a duty to avoid confusion with Monster, the MONSTER Marks, and MONSTER Trade Dress because Defendant entered the market after Monster.  Nevertheless, Defendant has purposely promoted, marketed, and/or sold its goods and services in a manner that causes a likelihood of confusion with Monster, the MONSTER Marks, and MONSTER Trade Dress.

53.     In addition, at least one person has commented on the similarities between Defendant's marks and the MONSTER Marks on Defendant's Facebook profile, as shown below:



Furthermore, Defendant has been portrayed as being associated with Monster in a YouTube video created by a third party.  A screenshot is shown below:



The video, located at https://www.youtube.com/watch?v=z9TYhAquWVI,

-35-

shows an actor portraying Carl Pegnatori, owner of Defendant's company, wearing clothing depicting Monster's famous Claw Icon, surrounded by cans of MONSTER™ drinks.

54.     By virtue of the acts complained of herein, Defendant has created a likelihood of injury to Monster's business reputation and goodwill, caused a likelihood of consumer confusion, mistake, and deception as to the source of origin or relationship of Monster's goods and services and Defendant's goods and services, and has otherwise competed unfairly with Monster by unlawfully trading on and using Monster's MONSTER Marks and MONSTER Trade Dress without Monster's permission or consent.

55.     Upon information and belief, Defendant has unlawfully copied protected elements of Monster's Copyrighted Claw Icon Designs.

56.     Upon information and belief, Defendant had access to Monster's Copyrighted Claw Icon Designs at least because Monster displays its Copyrighted Claw Icon Designs on its drinks, licensed clothing, packaging, its widespread promotional materials, and its publicly-available website.

57.     Without permission of Monster, Defendant is, or has distributed, displayed, and reproduced an identical and substantially similar design bearing protected elements of Monster's Copyrighted Claw Icon Designs.

58.     Upon information and belief, Defendant's acts complained of herein are willful and deliberate.

59.     Defendant's acts complained of herein have caused damage to Monster in an amount to be determined at trial, and such damages will continue to increase unless Defendant is enjoined from its wrongful acts and infringement.

60.     Defendant's acts complained of herein have caused Monster to suffer irreparable injury to its business.  Monster will suffer substantial loss of goodwill and reputation unless and until Defendant is preliminarily and

permanently enjoined from the wrongful acts complained of herein.

## IV.  FIRST CLAIM FOR RELIEF

### (Trademark Infringement, Trade Dress Infringement, and False Designation of Origin Under 15 U.S.C. § 1125(a))

61.    Monster hereby repeats, realleges, and incorporates by reference paragraphs 1-60 of this Complaint as though fully set forth herein.

62.    This is an action for trademark infringement, trade dress infringement, and false designation of origin arising under 15 U.S.C. § 1125(a).

63.    As a result of the widespread use and promotion of Monster's MONSTER Marks, and MONSTER Trade Dress, the marks and trade dress have acquired strong fame and secondary meaning to consumers and potential customers, in that consumers and potential customers have come to associate the MONSTER Marks and the MONSTER Trade Dress with Monster.

64.    Defendant has infringed the MONSTER Marks and the MONSTER Trade Dress, and created a false designation of origin, by using in commerce, without Monster's permission, the confusingly similar marks MONSTA, MONSTA ATHLETICS, MONSTA GEAR, MONSTA MILITIA,

 ,  , and other claw like designs, and a trade dress that is confusingly similar to the MONSTER Trade Dress in connection with the advertisement, promotion, offering for sale, and/or sale of Defendant's goods and services.

65.    Defendant has infringed the MONSTER Marks and the MONSTER Trade Dress, and created a false designation of origin, by using in commerce, without Monster's permission Monster's famous Claw Icon in

connection with the advertisement, promotion, offering for sale, and/or sale of Defendant's goods and services.

66.     Defendant's actions are likely to cause confusion and mistake, or to deceive as to the affiliation, connection, or association of Monster with Defendant, and/or as to the origin, sponsorship, or approval of Defendant's products or Defendant's commercial activities, in violation of 15 U.S.C. § 1125(a).

67.     Upon information and belief, Defendant did so with the intent to trade upon Monster's reputation and goodwill by causing confusion and mistake among customers and the public and to deceive the public into believing that Defendant's products are associated with, sponsored by or approved by Monster, when they are not.

68.     Upon information and belief, Defendant had actual knowledge of Monster's ownership and prior use of the MONSTER Marks and the MONSTER Trade Dress, and without the consent of Monster, willfully violated 15 U.S.C. § 1125(a).

69.     Defendant, by its actions, has damaged Monster in an amount to be determined at trial.

70.     Defendant, by its actions, has irreparably injured Monster.  Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

### V. <u>SECOND CLAIM FOR RELIEF</u>

**(Trademark Infringement Under 15 U.S.C. § 1114)**

71.     Monster hereby repeats, realleges, and incorporates by reference paragraphs 1-70 of this Complaint as though fully set forth herein.

72.     This is a claim for trademark infringement arising under 15 U.S.C. § 1114.

73.     Monster owns valid and enforceable federally registered trademarks for the MONSTER Marks, including at least the registrations listed in paragraphs 12 and 13 above.

74.     Defendant has used in commerce, without permission from Monster, colorable imitations, and/or confusingly similar marks to Monster's MONSTER Marks that are the subject of at least Monster's U.S. Trademark Registration Nos. 4,721,433, 3,908,601, 3,914,828, 4,332,062, 3,908,600, 3,923,683, 4,660,598, 4,865,703, 4,849,687, 4,849,747, 4,865,702, 4,051,650, 4,011,301, 3,963,669, 3,963,668, 4,822,675, 4,721,432, and 5,022,676 in connection with the advertising, marketing, and/or promotion of Defendant's goods and services.  Such use is likely to cause confusion or mistake, or to deceive.

75.     Upon information and belief, the activities of Defendant complained of herein constitute willful and intentional infringements of Monster's registered marks, and Defendant acted with the intent to trade upon Monster's reputation and goodwill by causing confusion and mistake among customers and the public and to deceive the public into believing that Defendant's goods and services are associated with, sponsored by, originated from, or are approved by, Monster, when they are not.

76.     Upon information and belief, Defendant had actual knowledge of Monster's ownership and prior use of the MONSTER Marks, and has willfully violated 15 U.S.C. § 1114.

77.     Defendant, by its actions, has damaged Monster in an amount to be determined at trial.

78.     Defendant, by its actions, has irreparably injured Monster.  Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

# VI.  THIRD CLAIM FOR RELIEF
## (Federal Dilution of the Claw Icon Mark Under 15 U.S.C. § 1125(c))

79.     Monster hereby repeats, realleges, and incorporates by reference paragraphs 1-78 of this Complaint as though fully set forth herein.

80.     This is a claim for federal trademark dilution arising under 15 U.S.C. § 1125(c).

81.     Products and services sold under Monster's Claw Icon mark have been widely advertised, promoted, and distributed to the purchasing public throughout the United States and the world.  By virtue of the wide renown acquired by Monster's Claw Icon mark, coupled with the national and international distribution and extensive sales of various products distributed under the Claw Icon mark, the Claw Icon mark is famous and became so prior to Defendant's acts complained of herein.

82.     Defendant's unauthorized and commercial use of the marks described herein in connection with the advertisement, offering for sale and sale of Defendant's goods and services has caused and is likely to continue to cause dilution of the distinctive quality of Monster's famous Claw Icon mark.

83.     Defendant's acts are likely to blur, tarnish, injure, or trade upon Monster's business, reputation or goodwill, and to deprive Monster of the ability to control the use of its Claw Icon mark and quality of products and services associated herewith.

84.     Upon information and belief, Defendant's dilution has been willful and deliberate.

85.     Defendant, by its actions, has damaged Monster in an amount to be determined at trial.

86.     Defendant, by its actions, has irreparably injured Monster.  Such irreparable injury will continue unless Defendant is preliminarily and

permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## VII.  <u>FOURTH CLAIM FOR RELIEF</u>

### (Trademark Counterfeiting Under 15 U.S.C. § 1114)

87.    Monster hereby repeats, realleges, and incorporates by reference paragraphs 1-86 of this Complaint as though fully set forth herein.

88.    This is a claim for trademark counterfeiting arising under 15 U.S.C. § 1114.

89.    Defendant has intentionally used in commerce, without permission from Monster, marks that are identical to, or substantially indistinguishable from, the mark that is the subject of Monster's U.S. Trademark Registration No. 4,051,650 in connection with selling, offering for sale, advertising, and/or promotion of hats and clothing.  Such use is likely to cause confusion, or to cause mistake, or to deceive.

90.    Monster is informed and believes, and on that basis alleges, that Defendant has used the non-genuine marks in connection with its business knowing that the marks are counterfeit. Monster is informed and believes, and on that basis alleges, that the activities of Defendant complained of herein constitute willful and intentional trademark counterfeiting, and Defendant acted with an intent to unfairly compete against Monster, to trade upon Monster's reputation and goodwill by causing confusion and mistake among customers and the public, and to deceive the public into believing that Defendant or Defendant's goods are associated with, sponsored by, or approved by Monster, when, in fact, they are not.

91.    Monster is informed and believes, and on that basis alleges, that Defendant had actual knowledge of Monster's ownership and prior use of the registered mark and without the consent of Monster, has willfully and intentionally violated 15 U.S.C. § 1114.  Monster is further informed and

believes, and on that basis alleges, that this is an exceptional case within the meaning of 15 U.S.C. § 1117.

92.     Defendant, by its actions, has irreparably injured Monster and damaged Monster in an amount to be determined at trial.  Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## VIII.  FIFTH CLAIM FOR RELIEF

### (Copyright Infringement Under 17 U.S.C. §§ 501 *et seq.*)

93.     Monster hereby repeats, realleges, and incorporates by reference paragraphs 1-92 of this Complaint as though fully set forth herein.

94.      This is an action for copyright infringement under the Copyright Act, 17 U.S.C. §§ 501, *et seq.*

95.     Monster is the owner of valid and enforceable copyrights in the Claw Icon, can art, and packaging, which contain copyrightable subject matter under 17 U.S.C. §§ 101, *et seq.*

96.     Monster has complied with the registration requirements of 17 U.S.C. § 411(a) for the Copyrighted Claw Icon Designs, and has obtained Copyright Registration Nos. VA 1-789-900, VA 1-789-991, VA 1-727-577, VA 1-737-654, VA 1-749-215, and VA 1-789-900.

97.     Defendant's deliberate copying of Monster's Copyrighted Claw Icon Designs infringes and continues to infringe Monster's Copyrighted Claw Icon Designs in violation of 17 U.S.C. § 501(a).   Defendant is directly infringing on Monster's exclusive right to reproduce copies, make derivative works, distribute copies, and display its Copyrighted Claw Icon Designs under 17 U.S.C. §§ 106(1)–(3), (5).

98.     Upon information and belief, Defendant's infringement has been willful and deliberate.

99.   Defendant, by its actions, has damaged Monster in an amount to be determined at trial.

100.   Defendant, by its actions, has irreparably injured Monster.  Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## IX.  SIXTH CLAIM FOR RELIEF

**(Petition for Cancellation of U.S. Trademark Registration No. 4,967,673)**

101.   Monster hereby repeats, realleges, and incorporates by reference paragraphs 1-100 of this Complaint as though fully set forth herein.

102.   This is a claim for cancellation of Defendant's U.S. Trademark Registration No. 4,967,673 under 15 U.S.C. § 1119.

103.   Since at least 2002, many years before the first use, filing and registration dates of U.S. Trademark Registration No. 4,967,673, Monster has continuously used its famous Claw Icon mark in connection with its products and services including clothing.   By virtue of Monster's continuous and substantial use of its Claw Icon mark, Monster's Claw Icon mark has become a strong identifier of Monster and its products and services, and distinguishes Monster's products and services from those of others.   Monster has built up significant and valuable goodwill and fame in its Claw Icon mark.   Monster relies on its U.S. Trademark registrations for its Claw Icon mark identified in Paragraphs 13 and 14 above.

104.   Monster will be damaged by continued registration of Defendant's U.S. Registration No. 4,967,673 in that the mark shown in the registration is confusingly similar to Monster's famous Claw Icon mark.  Potential purchasers, upon seeing Defendant's mark shown in the registration, are likely to mistakenly believe that such mark and goods identified in the registration originate with or are connected or associated with, or sponsored, licensed or

approved by Monster.  Thus, the registration and use of the mark shown in U.S. Registration No. 4,967,673 in connection with the goods identified therein are likely to cause confusion, or to cause mistake or to deceive within the meaning of Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d).

105.   In view of Monster's prior rights in the Claw Icon mark, Defendant is not entitled to federal registration of the mark shown in U.S. Registration No. 4,967,673 and this registration should be cancelled.

## X.  <u>SEVENTH CLAIM FOR RELIEF</u>

### (Dilution of the Claw Icon Mark Under California Business & Professions Code § 14247)

106.   Monster hereby repeats, realleges, and incorporates by reference paragraphs 1-105 of this Complaint as though fully set forth herein.

107.   This is an action for dilution under California Business & Professions Code § 14247.

108.   Monster's Claw Icon mark is famous and distinctive, and became famous prior to the acts of the Defendant complained of herein.

109.   Defendant's unauthorized commercial use of the confusingly similar marks  ,  ,  , and other claw like designs, in connection with the advertisement, offering for sale and/or sale of Defendant's goods and services is likely to cause dilution of the distinctive quality of the famous Claw Icon mark.

110.   Defendant's acts are likely to blur, tarnish, injure or trade upon Monster's business reputation or goodwill, and to deprive Monster of the ability to control its Claw Icon mark.

-44-

111. Defendant's aforementioned acts have injured Monster and damaged Monster in an amount to be determined at trial.

112. By its actions, Defendant has irreparably injured Monster. Such irreparable injury will continue unless Defendant is enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## XI.  EIGHTH CLAIM FOR RELIEF

### (Unfair Competition Under California Business & Professions Code §§ 17200 *et seq.*)

113. Monster hereby repeats, realleges, and incorporates by reference paragraphs 1-112 of this Complaint as though fully set forth herein.

114. This is an action for unfair competition under California Business & Professions Code §§ 17200, *et seq.*

115. By virtue of the acts complained of herein, Defendant has intentionally caused a likelihood of confusion among consumers and the public and has unfairly competed in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq*.

116. Defendant's acts complained of herein constitute trademark infringement, trade dress infringement, unfair competition, and unlawful, unfair, malicious or fraudulent business practices, which have injured and damaged Monster.

117. Defendant, by its actions, has irreparably injured Monster. Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## XII.  NINTH CLAIM FOR RELIEF

### (California Common Law Unfair Competition)

118.   Monster hereby repeats, realleges, and incorporates by reference paragraphs 1-117 of this Complaint as though fully set forth herein.

119.   This is an action for unfair competition under the common law of the State of California.

120.   Defendant's acts complained of herein constitute trademark infringement, trade dress infringement and unfair competition under the common law of the State of California.

121.   By virtue of the acts complained of herein, Defendant has willfully and intentionally caused a likelihood of confusion among the purchasing public in this Judicial District and elsewhere, thereby unfairly competing with Monster in violation of the common law of the State of California.

122.   Defendant's aforementioned acts have damaged Monster in an amount to be determined at trial.

123.   Defendant has irreparably injured Monster.  Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

124.   Defendant's willful acts of unfair competition under California common law constitute fraud, oppression and malice.  Accordingly, Monster is entitled to exemplary damages pursuant to Cal. Civ. Code Section § 3294(a).

## XIII.  PRAYER FOR RELIEF

WHEREFORE, Monster prays for judgment against Defendant as follows:

1.   That the Court render a final judgment in favor of Monster and against Defendant on all claims for relief alleged herein;

2.   That the Court render a final judgment that Defendant has violated the provisions of 15 U.S.C. § 1125(a) by willfully infringing the MONSTER

Marks and the MONSTER Trade Dress by using a false designation of origin, through the marketing, sale and promotion of Defendant's goods and services;

3.      That the Court render a final judgment that Defendant has willfully violated the provisions of 15 U.S.C. § 1114 by infringing Monster's trademark rights in at least the marks that are the subject of U.S. Trademark Registration Nos. 4,721,433, 3,908,601, 3,914,828, 4,332,062, 3,908,600, 3,923,683, 4,660,598, 4,865,702,  4,051,650, 4,011,301, 3,963,669, 3,963,668, 4,822,675, 4,721,432, and 5,022,676;

4.      That the Court render a final judgment declaring that Defendant has violated and willfully violated the provisions of 15 U.S.C. § 1125(c) by diluting Monster's famous Claw Icon mark;

5.      That the Court render a final judgment that Defendant has willfully violated the provisions of 15 U.S.C. § 1114 by counterfeiting Monster's registered trademark rights in at least the mark that is the subject of U.S. Trademark Registration No. 4,051,650;

6.      That the Court render a final judgment declaring that Defendant has violated and willfully violated 17 U.S.C. § 501(a) by infringing Monster's Copyrighted Claw Icon Designs;

7.      That the Court direct the United States Patent and Trademark Office to cancel U.S. Trademark Registration No. 4,967,673;

8.      That the Court render a final judgment declaring that Defendant has violated and willfully violated the provisions of California Business & Professions Code §14247 by diluting Monster's famous Claw Icon mark;

9.      That the Court render a final judgment declaring that Defendant has violated California Business and Professions Code §§ 17200, *et seq.* by committing trademark infringement, trade dress infringement and unfairly competing with Monster;

10.   That the Court render a final judgment declaring Defendant has violated California common law by unfairly competing with Monster;

11.   That Defendant, its agents, servants, employees, attorneys, successors, and assigns, and all other persons in active concert or participation with Defendant who receive actual notice of the injunction by personal service or otherwise, be forthwith preliminarily and permanently enjoined from:

a.   using the marks MONSTA, MONSTA ATHLETICS, MONSTA GEAR, MONSTA MILITIA, ,

, other claw like designs, and/or a trade dress that is confusingly similar to the MONSTER Trade Dress in connection with the advertising, promotion, or sale of Defendant's goods or services, using any of the MONSTER Marks, or MONSTER Trade Dress, in advertising or promoting Defendant's goods and services including, but not limited to, on Defendant's softball bats, apparel, team uniforms, and accessories, using any designs substantially similar to Monster's Claw Icon mark and/or using confusingly similar variations of any of the MONSTER Marks, or MONSTER Trade Dress in any manner that is likely to create the impression that Defendant's goods and services originate from Monster, are endorsed by Monster, or are connected in any way with Monster;

b.   filing any applications for registration of any trademarks, trade dress, copyrights or designs including "MONSTA," confusingly similar to the MONSTER Marks or MONSTER Trade Dress or substantially similar to Monster's Copyrighted Claw Icon Designs;

c.    otherwise infringing any of the MONSTER Marks, or any of Monster's other trademarks, or Monster's MONSTER Trade Dress;

d.    falsely designating the origin of Defendant's products;

e.    unfairly competing with Monster in any manner whatsoever; and

f.    causing a likelihood of confusion or injury to Monster's business reputation;

12.    That Defendant be directed to file with this Court and serve on Monster within thirty (30) days after the service of the injunction, a report, in writing, under oath, setting forth in detail the manner and form in which they have complied with the injunction pursuant to 15 U.S.C. § 1116;

13.    That Defendant be required to account to Monster for any and all profits derived by Defendant and all damages sustained by Monster by virtue of Defendant's acts complained of herein;

14.    That Defendant be ordered to pay over to Monster all damages which Monster has sustained as a consequence of the acts complained of herein, subject to proof at trial, together with prejudgment and post-judgment interest;

15.    That this case be deemed exceptional and the amount of the damages be trebled and that the amount of profits be increased by as many times as the Court deems appropriate, pursuant to 15 U.S.C. § 1117;

16.    That if Monster elects, Monster be awarded statutory damages pursuant to 15 U.S.C. § 1117(c);

17.    That Monster be awarded its damages and Defendant's profits under 17 U.S.C. § 504, as well as enhanced damages pursuant to 17 U.S.C. § 504.   Alternatively, if Monster elects, that Monster be awarded statutory damages pursuant to 17 U.S.C. § 504;

18.    That Monster be awarded exemplary damages from Defendant pursuant to Cal. Civ. Code. § 3294;

19.    That Defendant's actions be deemed willful;

20.    That an award of reasonable costs, expenses, and attorneys' fees be awarded to Monster pursuant to at least 15 U.S.C. § 1117 and 17 U.S.C. § 505;

21.    That Defendant be required to deliver and destroy all devices, literature, advertising, goods, and other unauthorized materials bearing the MONSTA, MONSTA ATHLETICS, MONSTA GEAR, MONSTA MILITIA,

 ,  ,  , other claw like designs, any of the MONSTER Marks, MONSTER Trade Dress, or any confusingly similar marks, pursuant to 15 U.S.C. § 1118;

22.    That Monster be awarded restitution and disgorgement; and

23.    That Monster be awarded such other and further relief as this Court may deem just.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated:  April 25, 2018           By: */s/ Nicole Rossi Townes*
                                     Steven J. Nataupsky
                                     Lynda J. Zadra-Symes
                                     Nicole Rossi Townes
                                     Jacob R. Rosenbaum

                                 Attorneys for Plaintiff,
                                 MONSTER ENERGY COMPANY

## XIV.  DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Monster Energy Company hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  April 25, 2018          By:  */s/ Nicole Rossi Townes*
                                    Steven J. Nataupsky
                                    Lynda J. Zadra-Symes
                                    Nicole Rossi Townes
                                    Jacob R. Rosenbaum

                                    Attorneys for Plaintiff,
                                    MONSTER ENERGY COMPANY

27962584

-51-